(Superior Court of Cincinnati.)
General Term, 1898.

## JAMES HAY ET AL v. THE CITY OF CINCINNATI & H. P. BOYDEN, ITS AUDITOR.

(1.) The rights of one who presents to the proper municipal board a petiton to improve a street, and who does not withdraw such petition after a change in the law affecting the rights of property holders in such cases and before the passage of the ordinance to improve, must be governed by the law in force at the time of the passage of the improvement ordinance, and not at the time the petition was presented.

By failure to withdraw his request to the city for the improvement of the street before the improvement ordinance is adopted the property owner is presumed to have acquiesced in the continuance of the proceedings with knowledge of the changed conditions of the law.

In such case his petition will be regarded as constituting a continuing offer held out to the city after the law has been so changed.

(2.) It will not be presumed that the city acted independently of the petition of the property owner, although at the time it was presented it was not signed by the requisite number of property holders in interest as required by the law in force at such time.

(3.) The city will not be chargeable with *laches* by failure to act upon the petition of a property owner within a prescribed time.

---

JACKSON J.

This case is reserved to this court upon an agreed statement of facts from which and the pleadings in the case substantially the following appears: The plaintiffs are the owners of certain lots abutting upon Goodwin Street from Hoge St., to Taylor Avenue, and on May 26th, 1892, they presented a petition to the Board of Administration for the improvement of Goodwin Street by grading etc. The petition was referred to the City Engineer, who on June 2nd, 1892, reported that said petition was signed by less than three fourths of the property holders in interest. On July 6th, 1894, the Board of Legislation duly passed a resolution declaring it necessary to improve said Goodwin Street from Hoge Street to Taylor Avenue, by by grading etc. (due notice of which resolution was given to the holders of property in interest as provided

by statute) and thereafter on November 2nd, 1894, said Board of Legislation passed an ordinance to improve Goodwin Street between the points aforesaid. Thereafter, in September, 1895, the Board of Administration passed an ordinance assessing the sum of $5.93 per abutting foot upon the abutting property. It is admitted that said assessment is largely in excess of twent -five per cent. of the value of said lots of plaintiffs, and that plaintiffs have tendered to defendants 25 per cent. of said value, and are willing and ready to pay the same in full for their said assessment against their respective lots. Defendants refuse to accept the same, and demand payment of the entire assessment as levied. "Plaintiffs therefore pray that said assessment against their said lots may be revised, corrected and reduced to the amounts stated in said petition, and to be restricted to twenty-five per cent. of the value of said lots."

Under section 2272 of Revised Statutes of Ohio, before amendment, when a petition is presented asking for an improvement, signed by three fourths of the property owners in interest, abutting upon the proposed improvement the assessment may be made without regard to the twenty-five per centum limit.

This act continued in force until May, 1894, when the three fourths provision was stricken out of section 2272, so that there after any person or persons petitioning for the improvement were liable for the assessment without regard to the twenty-five per centum limit. Therefore at the time the petition of plaintiffs was presented to the Board of Adminstration, the plaintiffs would not, under the then existing law, have been liable for an assessment in excesses of twenty-five per cent. of the value of their property, inasmuch as it was not signed by three-fourths in interest, but at the time of the passage of the resolution and the ordinance to improve the law had been changed as stated.

The single question therefore presented is, are the petitioners entitled to the benefit of the law as it stood at the time when their petition was presented, or are they bound by the provisions of the statute as changed after the presentation of their petition?

In the case of Cincinnati v. Seasongood, 46, O. S., 296 it is held, "That a municipal corporation, having through its proper boards and officers passed a resolution and ordinance to improve a street, in its estimation of the cost and expense of their improvement upon the abutting property, it should be governed by the law in force at the time of the passage of its improvement ordinance, with respect to the manner of assessment, and the rights and liabilities of the owners of abutting property."

In the Seasongood case, the law was changed between the times of the passage of the improvement ordinance and the assessment ordinance. The court said on page 301: "The material question, there-

fore, presented in this cause by the petition and demurrer is, under what law should the assessment have been made, whether the act of March 27th, 1884, which was in force prior to and at the time of the passage of the ordinance to improve, should have been applied, or the law as amended March 11th, 1887, after the passage of the ordinance to improve and prior to the passage of the assessing ordinance." In deciding the question that the law at the time of the passage of the improvement ordinance was to govern, the court on page 303 said: "It is reasonable to presume that the passage of the ordinance to improve the street was not without reference to the existing rights and liabilities. The ordinance was doubtless passed in full view of the law as it then stood in regard to said assessments." This court in the case of Shehan v. the city of Cincinnati, 225 W.L. B., 212, laid down a similar rule as follows: "The law in force at the time of the passage of the improvement ordinance governs with respect to the manner of assessment, and the rights and liabilities of the owners of abutting property; this rule is not affected by the fact that the owners of the abutting property petitioned for the improvement." In the Shehan case the petition was properly signed by three fourths in interest of the owners abutting on the proposed improvement, and after the passage of the resolution declaring it necessary to improve the thoroughfare, and before the passage of the ordinance to improve, the law with reference to the assessment upon corner lots had been changed. At the time of the passage of the resolution of necessity, section 2269 Revised Statutes provided: "And if in making such assessment by the foot front, there is land bounding or abutting upon the improvement not subdivided into lots, or if there be lots numbered and recorded bounding or abutting on said improvement lying lengthwise of said improvement, council shall fix in like manner the front of said land to the usual depth of lots so that it will be a fair average of the depth of lots in the neighborhood which shall be subject to such assessment. "Prior to the passage of the improvement ordinance, this section was amended by omitting the words: "Or if there be lots numbered and recorded, bounding or abutting on said improvement and laying lengthwise on said improvements", so that, as the law stood when the petition was presented and the improvement resolution was passed, the lot owner was assessable only to the usual depth of lots, whereas, under the law in force at the time of the passage of the improvement ordinance, the lot owner was assessable upon the lengthwise side of the lot. In this case Judge Sayler announcing the opinion of the court, held that the law in force at the time of the improvement ordinance was to govern, and in so doing stated the reasons of the court as follows: "The property owners propose to the city, if the city will

make the improvement they will pay the expenses. This proposition binds no one, but on the strength of it, the council declare by resolution the necessity of such improvement, and that confessedly binds no one, as under section 2304, notice of such resolution must be given so that claims for damages may be filed, and it is only after a time has elapsed, during which claims may be filed, that the council may, under section 2316 determine whether it will proceed with the proposed improvement, and if it decides to proceed therewith, an ordinance for the purpose shall be passed. Clearly the city can not be bound to anything until under section 2316 it decides to proceed with the improvement, and this decision is expressed by an ordinance to improve, and therefore, by this ordinance, the city accepts the proposition of the property owners. Prior to that time the property owner is not bound. He may withdraw his name from the petition. He is only bound when the city accepts his proposition.''

It is contended by counsel for the plaintiffs that the Shehan case is not analogous to the case at bar, for the reason that the petitioners in the Shehan case did represent more than three-fourths in interest, and that the law which was held to govern at the time of the passage of the improvement ordinance related to the mode or manner of assessment, and not to the amount. Counsel insists that the Shehan case is not applicable because the petition as originally presented was sufficient to bind all the property holders to pay the assessment in excess of twenty-five per cent. of the value of their property, whereas, the petition in the case at bar was not sufficient for this purpose when originally presented. But this overlooks the underlying principle upon which the Shehan case was decided, viz: That the petition of property owners for the improvement of a street is in its nature a continuing offer to the city; that it is an offer which may be withdrawn by the property holders at any time prior to the passage of the ordinance to improve, and that by the passage of the ordinance to improve the petition of the property owners, being in the nature of a continuing offer, becomes then and there accepted, subject to the then existing law. It was this reasoning which enabled the court to reach the conclusion announced in the Shehan case, and which we think makes the principle there announced clearly applicable to the case at bar. Besides it must be remembered that while the law of corner lot assessment deals with the mode or manner of assessment, that it did in fact affect substantial rights, and that the amount to be recovered under the law as it stood when the petition for improvement and the improvement resolution was pased, did in fact impose a considerable less burden upon the property owner than the law relating to assessment of corner lots as it stood at the time of the passage of the improvement ordinance. We therefore think that

the decision in the Shehan case is analogous and controlling in the case at bar.

But it is further urged on behalf of counsel for plaintiffs, that inasmuch as the petition of plaintiffs as originally presented was not binding upon the plaintiffs, because it did not represent three fourths of the property holders in interest, that there was in fact no valid offer on behalf of the said petitioners, and consequently that any change in the law which would constitute such invalid offer a valid one, would be a retroactive law, and unconstitutional. But again, this ignores the fact that the offer by the petitioners is a continuing offer, and that the law, as amended in May, 1894, does not apply to the action of the plaintiffs in originally making the offer prior to that date, but applies to their action in holding out the offer up, to and at the time of the passage of the improvement ordinance, at which time their offer was accepted, and became binding, and at which time the law had been changed.

Again, it is urged by plaintiffs that it is not reasonable to presume that the Board of Legislation acted upon the petition, inasmuch as the petition when originally presented was not signed by three fourths in interest. Therefore they insist that the city must have acted independently of the petition of the plaintiffs in passing the resolution and ordinance for the improvement of Goodwin Street. But in the case of Squire against the city of Cincinnati, 5 C. C. page 400, the court held that in such cases a contrary presumption must prevail. In that case, the court on page 402 said: ''We are of opinion that as this petition of Hyman was in fact filed in the office of the board, and placed with the other papers relating to this improvement before the passage of the ordinance to improve the avenue, and was evidently dealt with by those having charge of the papers and files of the board as an addition to the original petition, and which files would be likely to come before the board when recommending the passage of the ordinance to make the improvement, that the presumption is very strong that it did come to the knowledge of the board and influenced it in making this recommendation. The fact that no mention is made of it on the journal, and the want of recollection of the secretary of the board of his having seen it, to our minds is not sufficient to overcome this presumption.

''But if the fact was that the board did not consider it while making this recommendation, we are not prepared to say that where a person by such supplemental petition, duly filed in the office, and placed where the law provides for the filing of such papers, asks for the improvement which is afterwards ordered and made in accordance with his petition and the petition of others in like form, that he should be allowed to escape from the assessment made to pay for the same, even if the board had not in fact considered his petition.''

The same doctrine was laid down by the Supreme Court of this state in the case of Campbell v. Park, 31 O. S., 545.

Again, it is contended by plaintiffs that the presentation of their petition instituted a proceeding, and that they are thereby protected from any subsequent change in the law by virtue of section 79 Revised Statutes of Ohio, which provides as follows: "Whenever a statute is repealed or amended, such repeal or amendment shall in no manner effect pending actions, prosecutions or proceedings, civil or criminal, and when the repeal or amendment relates to a remedy, it shall not affect pending actions, prosecutions or proceedings unless so expressed; nor shall any repeal or amendment affect causes of action, prosecutions or proceedings existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act."

In Commissioners v. Green, 40 O. S. 318, it was held that the proceedings contemplated by section 79, had reference only to "judicial matters", and related solely "to the prosecution or defense of civil and criminal proceedings." But this case has been expressly overruled by the Supreme Court in its latest declaration on this subject in case of Cincinnati v. Davis, 58 O. S. 225. It was there held that the section in question did apply to proceedings instituted by municipal boards. On page 233, the court in the Davis case said: "By its resolution and the notices served on the property owners, the proceeding for the improvement of the alley named was commenced and the board of Legislation acquired jurisdiction of the proceeding for the construction of the improvement."

But in that case it will be noted that the resolution to improve was passed and the notices were served on the property owners prior to the change in the law which transferred ܛjurisdiction in such matters from the Board of Legislation to the Board of Administration, while in the case at bar no action whatever was taken by the board prior to the change in the law. True, the plaintiff had presented his petition, but no action was taken thereon; and we are disposed to view the presentation of such petition by a property owner not as instituting a proceeding, but as an invitation to the Board to institute such proceeding.

However this may be, the court in the Davis case refers with approval to the case of Shehan v. Cincinnati, supra, and expressly adopts the rule that notwithstanding a proceeding has been begun (as was done in the Shehan case), parties having an opportunity to terminate the proceeding before the ordinance is adopted, and not having done so, are presumed to have assented to the continuance of the proceeding under the law as amended. On pp. 236-237, the court say: "If therefore it be conceded that a proceeding was begun in the case at bar before the amendment to the law, still it must be held upon the authority of

Cincinanti v. Seasongood and Shehan v. Cincinnati, supra, that plaintiff having the right to terminate said proceeding before the passage of the ordinance, and not having done so, must be presumed to have assented to the passage of said ordinance in the light of the amendment to the act in question."

Again, it is urged on behalf of plaintiffs that the city is barred by laches, inasmuch as the petition for the improvement of Goodwins Street was presented on the 26th of May, 1892, and the resolution to improve was not passed until July 6th, 1894, and the ordinance to improve until November 2nd, 1894, but we think the Board of Legislation, upon whom the power is conferred, must be the sole judge of the time within which it is to act. This view seems to be supported in the case of Fairbanks v. The Mayor and Alderman of Fitchburg, 132 Mass., page 44, wherein the court asys: "When authority is given to make a similar asessment, but no limitation of time is fixed within which the assessing board must act, it must be held that the legislature has confined to the discretion of the board, the duty of deciding conclusively when the assessment shall be made. Cases may readily be conceived where great delays may be necessary, and of the propriety of such delay the assessing board alone must judge until its authority is distinctly restricted."

For the foregoing reasons we are of opinion that the assessment levied is in all respects valid, and the plaintiffs prayer for relief must be denied.

F. C. Ampt, for Plaintiffs.

Corporation Counsel, for Defendants.